**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Criminal No. 6:13cr005 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL TAYLOR | ) | By: Hon. Robert S. Ballou |
| | ) | United States Magistrate Judge |
| | ) | |

**REPORT AND RECOMMENDATION**

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's informed and written consent, this case was referred to me for the purpose of conducting a plea hearing.

As set forth in more detail in the Indictment, the Grand Jury previously returned a one count Indictment charging that, beginning in or about October 2012, and continuing through on or about January 3, 2013, in the Western District of Virginia, the defendants, Jason C. Mays, Renee A. Mauck, Stacy L. Chittum, Andrew I. Wells, and Michael Taylor, aka "Mikey" and "Mike," did knowingly and intentionally combine, conspire, confederate, and agree with each other, and with other persons known and unknown to the Grand Jury, to distribute a controlled substance, to wit: 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, a violation of Title 21, United States Code, Section 841(a)(1), and all this was in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

1

The plea hearing was conducted before me on March 19, 2013. The defendant was at all times present in person and with his counsel, Randy Cargill. The United States was represented by Thomas Cullen, Assistant United States Attorney. The proceedings were transcribed by a court reporter. See Rule 11(g), Federal Rules of Criminal Procedure.

With the defendant's informed and written consent, I made a Rule 11 inquiry; the government presented an oral proffer of evidence for the purpose of establishing an independent basis for the defendant's plea, and the defendant entered a plea of guilty to Count One of the Indictment.

## DEFENDANT'S REPONSES TO RULE 11 INQUIRIES

The defendant indicated that he was able to understand the proceedings. He further indicated that he would inform the court if there was a question asked or statement made that he did not understand, or if he did not agree with any statement made. The defendant was then placed under oath and addressed personally in open court. He expressly acknowledged that he was obligated to testify truthfully in all respects under penalty of perjury and that he understood the government's right, in a prosecution for perjury or false statement, to use against him any statement that he gave under oath. See Rule 11(b)(1)(A).

The defendant testified to the following facts: his full legal name is Michael Taylor. He is able to read and write the English language. He testified that he had no medical condition, either physical or mental, which might interfere with his ability to understand and to participate fully in the proceeding; he stated he had not consumed any alcohol, medication, or other drugs or substances which might impair his ability to participate fully in the proceeding and that his mind was clear. Upon inquiry, the defendant's attorney represented that he had no reservations about the defendant's competency to enter a plea of guilty to the Indictment.

The defendant confirmed that he fully recognized and understood his right to have the Rule 11 hearing conducted by a United States district judge, and he gave his verbal and written consent to proceeding with the hearing before a United States magistrate judge. The defendant's written consent was filed and made part of the record.

The defendant acknowledged that he had received a copy of the Indictment and that he had a copy of it before him. His attorney waived formal reading of the Indictment. The defendant indicated that he had read the Indictment. He expressly stated that he understood the nature of the charge against him in the Indictment and that he further understood that the charge was a felony offense. See Rule 11(b)(1)(G). He indicated his understanding that a plea of guilty meant that he was agreeing that he did the things charged in the indictment. The defendant further stated that he had a chance to fully discuss all of the charges contained within the Indictment with his attorney and that he had been given enough time to do so. He testified that he had discussed any possible defenses with his attorney and that he had been given adequate time to prepare any defenses he might have to the charges. He stated that his decision to enter a plea of guilty to the Indictment had been made after consulting with his attorney.

Counsel for the parties had previously informed the court that the defendant's proposed plea of guilty was to be made pursuant to a written plea agreement (see Rule 11(c)(2)). The defendant stated that he had a copy of the signed written plea agreement before him. He stated that he had read the plea agreement before signing it; that every page had been read to him; that he had discussed the agreement with counsel before signing it; that it was in fact his signature upon the written agreement before him; and that he had initialed every page. Counsel for the government then set forth the government's understanding of the plea agreement in some detail: including the agreement for the defendant to plead guilty to the violation of 21 U.S.C. §§ 846

and 841(b)(1)(A) (¶ A.1); the defendant's express acknowledgement of the maximum sentence for the offense (¶ A.1); the defendant's express understanding of his various potential monetary obligations, including that he may be required to pay fees for his incarceration and supervised release, that he may be required to pay restitution, that his assets may be subject to forfeiture, and that he must pay a $100.00 special assessment (¶¶ A.1 and B.5.a); the defendant's admission of his factual guilt to the Indictment and his stipulation that there is a sufficient factual basis to support each and every material allegation underlying the charge to which he was proposing to plead guilty (¶¶ A.1 and E.4); the defendant's express acknowledgement of the trial rights waived by entry of a voluntary plea of guilty (¶ A.2); the agreement's provision outlining the fact that sentencing is within the sole discretion of the court "subject to its consideration" of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a) (¶ B.1); the defendant's express recognition that he would not be allowed to withdraw his guilty plea regardless of the sentence imposed by the court (¶ B.1); the defendant's express acknowledgement that the government would object to any sentence below the guideline range (¶ B.1); the defendant's stipulation as to his convictions of two qualifying felony drug offenses cited in the Information filed by the government pursuant to 21 U.S.C. § 851; (¶ B.2); the terms under which the government agreed to dismiss from the Information one of those qualifying felony drug offenses; (¶ B.2); the terms of the acceptance of responsibility provision (¶ B.3); the substantial assistance provisions (¶ B.4); the defendant's financial disclosure obligation (¶ B.5.b); the scope of the defendant's express waiver of his right of direct appeal (¶ C.1); the scope of the defendant's express waiver of his right to make any collateral attack on any judgment or sentence imposed by the court (¶ C.2); the defendant's abandonment of any seized property (¶ C.5); the defendant's waiver of all rights to access of investigation or prosecution records or information (¶ C.3); the

4

defendant's various additional duties, including those of cooperation, disclosure, and truthful testimony (¶ C.7); the remedies available to the government in the event of a breach of the agreement by the defendant (¶ D); the defendant's acknowledgement that he had been effectively represented in this case (¶ E.3); the parties express acknowledgement that the written plea agreement constituted the entire understanding between the parties (¶ E.4); and the substance of the agreement's other terms and provisions. See Rule 11(b)(1)(B)-(N) and 11(c)(1)-(3).

After which, the defendant stated that his understanding was the same as that set forth by the government's attorney. Counsel for the defendant likewise represented that his understanding was the same. He further represented that each of its terms had been reviewed with the defendant and he stated that he was satisfied that the defendant understood all of its terms. The defendant further testified that no one had attempted to force, threaten , pressure, or coerce him to plead guilty and that no one had made any promises or assurances—such as leniency or special treatment—to him that differed from what was set forth in the written plea agreement. He affirmed that the plea agreement represented in its entirety any understanding he had with the government. The defendant once again stated that he understood that the offense to which he was pleading guilty was a felony and that such an adjudication could deprive him of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The agreement was then received, filed, and made a part of the record.

The defendant was explained the charge subject to the plea. He indicated that he had read the one count Indictment. The court recited the charging language of Count One of the Indictment. The defendant expressly acknowledged his understanding of the charges he faced. He indicated that his counsel had explained the elements of the offense to him. Counsel for the

5

government then set forth the government's understanding of the offense: (1) that the defendant knowingly agreed with at least one other person to violate the federal drug laws, (2) that he knew the essential objective of the conspiracy, that is, to distribute methamphetamine, (3) that he knowingly and voluntarily involved himself in the conspiracy in some fashion, and (4) that the amount of methamphetamine that was known to or reasonably foreseeable by him during the course of the conspiracy was at least 500 grams. The defendant indicated that he understood those elements.

The court then recited the maximum possible penalty provided by law for Count One of the Indictment, to wit: incarceration for a term of life; a fine of up to eight million dollars ($8,000,000.00); a special assessment of one hundred dollars ($100.00); and a term of supervised release up to life. The court then recited the mandatory minimum penalty provided by law for Count One of the Indictment, to wit: incarceration for period of twenty years; a special assessment of one hundred dollars ($100.00); and a term of supervised release of ten years. See Rule 11(b)(H)-(I), (L). The defendant expressly acknowledged he understood these penalties and that his counsel had fully explained those penalties to him.

The defendant then expressly acknowledged that the court's determination of his sentence would include consideration of multiple factors, including: the nature and circumstances of the offense; the defendant's history and characteristics; the seriousness of the offense; the need to promote respect for the law; the need to provide for just punishment and afford adequate deterrence; the need to protect the public; the kinds of available sentences; the pertinent sentencing guidelines and policy statements; the need to avoid unwanted sentence disparities; and any need to provide for restitution. He also acknowledged that he understood

6

that the court may order him to make full restitution to any victim and may require him to forfeit certain property to the government. See Rule 11(b)(1)(J)-(K).

The defendant testified that he and his attorney had talked about how the Sentencing Guidelines might apply to his case, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Guidelines and other factors under 18 U.S.C. § 3553(a). See Rule 11(b)(1)(M). He stated that he understood that the court will not be able to determine the recommended guideline sentence for his case until after the pre-sentence report has been completed and he and the government each have an opportunity to challenge the facts reported by the probation officer. He likewise affirmed his understanding that that the sentence that is ultimately imposed might be very different from what his counsel estimated, because of the factors that need to be investigated in applying the Guidelines and based on what the court determines to be an appropriate sentence after that investigation is completed. The defendant also stated that he understood that, after the court determined what guideline applies, that guideline will simply be one factor, among the other factors court listed earlier, that the court will consider for sentencing.

The defendant further acknowledged that the guidelines stipulation contained in the plea agreement—specifically a base offense level of thirty-two—is part of an agreement between him and the government and that the stipulation is not binding on the court. He indicated his understanding that the court is free to disagree with the guidelines stipulations contained in the plea agreement based on the recommendation in the pre-sentence report, the law, and the facts. The defendant then acknowledged that he knew that regardless of any sentence imposed by the court he would have no right to withdraw this guilty plea. See Rule 11(c)(3)(B). He expressed his understanding that the agreement by the United States to recommend a sentence at the low

end of the applicable guidelines range was merely a recommendation to the court and that the court can reject the recommendation of the government.

The defendant indicated that he understood that there is no parole in the federal system, that he had no right to parole under a federal sentence, and that if sentenced to prison in connection with a conviction for the pending charge he would serve the full term, less any good time credit earned. He further acknowledged that he knew and understood any sentence of incarceration imposed by the court would also include a period of "supervised release," and he knew any violation of the terms or conditions of such supervised release could result in his being returned to prison for an additional period of time. See Rule 11(b)(1)(H).

Pursuant to the terms of the plea agreement (¶ C.1.), the defendant expressly acknowledged that he understood that he was giving up all waivable rights to appeal. Likewise, pursuant to the terms of the plea agreement (¶ C.2), he expressly acknowledged that he understood he was giving up all waivable rights to challenge his conviction or his sentence in any post-conviction hearing.

Each of his procedural rights surrendered on a plea of guilty was also explained: including, his right to plead not guilty to any offense charged against him and his right to persist in any such not guilty plea; his attendant right to a trial by an impartial jury; his right to counsel to assist in his defense; his presumption of innocence; the obligation of the government to prove his guilt beyond a reasonable doubt; his right at trial to see, to hear, to confront, and to have cross-examined all witnesses presented against him; his right to decline to testify unless he voluntarily elected to do so in his own defense; his right to remain silent; his right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in his defense; and his right to a unanimous guilty verdict. See Rule 11(b)(1)(B)-(E). The defendant

testified that he understood his right to plead not guilty and the attendant trial rights that he would waive by pleading guilty. See Rule 11(b)(1)(F). The defendant expressly stated that he was fully satisfied with the advice and representation given to him by his counsel in this case.

To permit the court to determine whether an independent factual basis existed for the defendant's plea, counsel for the government orally proffered on the record the facts that the government was prepared to prove at trial to establish Count One of the Indictment. The government's proffer was as follows:

From in or about late September 2012 until January 2nd, 2013, Jason Mays, a resident of Rockbridge County, was involved and became a mid-to-wholesale level dealer of methamphetamine. The evidence would have shown that Mr. Mays a couple of times a week would go to Roanoke and receive anywhere from three to eight ounces at a time of methamphetamine, take that back to Rockbridge County, distribute it through a distribution network that included the defendant in this case, Michael Taylor.

The evidence would have shown that approximately one to two times a week from in or about early October until January 2nd, Mr. Taylor received from Jason Mays methamphetamine sometimes once, sometimes twice a week, and that continued for a period of three plus months over the life of the conspiracy.

The government would have established those facts from the testimony of Jason Mays, who would have testified against Mr. Taylor. Codefendant Stacy Chittum, who worked for Mr. Mays as a courier, would have also testified that she was involved in the distribution both personally with Mr. Mays and Mr. Taylor, a number of times went to Mr. Taylor to collect money and do other things related to the conspiracy from him.

Also during the relevant time period, on or about October 15th, 2012, the government would have proven at trial that officers and agents associated with the Rockbridge County Drug Task Force conducted a controlled purchase of a small amount of methamphetamine from Mr. Taylor when he was in a hotel room up in the Lexington area. And that would have been an overt act essentially in furtherance of the conspiracy. That's the time period that he was receiving methamphetamine directly from Jason Mays.

The government further proffered that it would have proven that Mr. Taylor, upon being arrested and informed of his rights, gave a statement in which he admitted receiving quantities of

9

methamphetamine from Mr. Mays a couple times a week for a period of approximately three months.

Counsel for the government was then questioned as to the evidence of the total amount of methamphetamine as to both the defendant and as to the conspiracy as a whole. The government made the following additional proffer of facts:

The conspiracy itself involved anywhere north of 1,000 grams, probably closer to 1.5 kilograms or more with respect to Mr. Mays. As it relates to Mr. Taylor, the amount that was known to or reasonably foreseeable by him was somewhere north of 500 grams, based on the testimony of Mr. Mays at trial.

The defendant and his counsel did not contest any of the facts as orally proffered by counsel for the United States. See Rule 11(b)(3). The defendant expressly acknowledged that he was in fact guilty of what was charged in the Indictment.

After testifying that he had heard and understood all parts of the proceeding and after consulting further with his attorney, the defendant stated that it remained his intention and desire to plead guilty pursuant to the terms of the plea agreement. He reaffirmed that the he was pleading guilty of his own free will. Thereupon, he was called upon for his plea, and he entered a plea of GUILTY to the offense charged in Count One alleging his violation of Title 21,United States Code, Section 846 and 841(b)(1)(A). The clerk then read the written guilty plea form to the defendant; after acknowledging it to be correct, the defendant executed it, and it was filed and made a part of the record.

The defendant was then informed that acceptance of the plea agreement and his guilty plea would be recommended to the presiding district judge, that a pre-sentence report would be prepared, that he would be asked to give information for that report, that his attorney may be present if he wished, and that he and his attorney would have the right to read the pre-sentence

report and to file objections to it. The defendant was remanded to the custody of the United States Marshal pending preparation of a pre-sentence report and acceptance of his guilty plea.

## FINDINGS OF FACT

Based on the evidence, representations of counsel, and the defendant's sworn testimony presented as part of the hearing, the undersigned submits the following formal findings of facts, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea to Count One of the Indictment;

2. The defendant is fully aware both of the nature of the charge set forth in Count One and of the consequences of his guilty plea;

3. The defendant is fully informed, and he understands, the applicable enumerated items set forth in Rule 11(b)(1)(A)-(N);

4. The defendant's plea of guilty was made pursuant to a fully voluntary written plea agreement;

5. The defendant's entry into the plea agreement and his tender of a plea of guilty pursuant to the terms of the plea agreement were both made with the advice and assistance of counsel;

6. The defendant knowingly and voluntarily entered his plea of guilty;

7. The defendant's plea of guilty did not result from force, threats, inducements or promises other than those promises contained in the written plea agreement;

8. The plea agreement complies with the requirements of Rule 11(c)(1); and

9. The evidence presents an independent basis in fact containing each essential element of the offense to which the defendant has entered a plea of guilty.

## RECOMMENDED DISPOSITION

Based on the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to the offense charged in Count One of the Indictment, that

he be adjudged guilty of the said felony offense, and that a sentencing hearing be set before the presiding district judge.

## NOTICE TO PARTIES

NOTICE is hereby given to the provisions of 28 U.S.C. § 636(b)(1)(C): Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by the rules of court. The presiding district judge shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which an objection is made. The presiding district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The presiding district judgment may also receive further evidence or recommit the matter to the undersigned with instructions. A failure to file timely written objections to these proposed findings and recommendations within fourteen (14) days could waive appellate review.

The clerk is further directed to transmit a copy of this Report and Recommendation to all counsel of record, and at the conclusion of the fourteen-day period the clerk is directed to transmit the record in this matter to the presiding United States district judge.

Entered: April 1, 2013

/s/ *Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge